**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jacob Amrani, | 2:12-cv-2583 JWS |
|       Plaintiff, | **ORDER AND OPINION** |
|   vs. | **[Re: Motion at Docket 249]** |
| United States of America, | |
|       Defendant. | |

## I.  MOTION PRESENTED

Plaintiff Jacob Amrani ("Dr. Amrani") filed his final witness list at docket 234.  At docket 249 defendant United States of America ("United States") filed objections to Dr. Amrani's final witness list.  Dr. Amrani responds at docket 251.  United States replies at docket 253.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Dr. Amrani is a board certified orthopedic surgeon who specialized in spine surgery.  Dr. Amrani's practice in Phoenix was conducted at his own clinic, the Deer Valley Spine Center.  Because he is a veteran, Dr. Amrani is eligible to receive his own medical care from the Veteran's Administration ("VA").  Some time after he suffered a

1 | severe injury to his right should while weightlifting, Dr. Amrani sought treatment at the
2 | VA hospital in Phoenix.  Dr. Amrani was placed under the care of Dr. Cranford, a board
3 | certified orthopedic surgeon who performed right shoulder rotator cuff surgery on
4 | Dr. Amrani.  The surgery included excision of a soft tissue mass in the shoulder.
5 | Dr. Amrani claims that as a result of the medical negligence of Dr. Cranford, he has
6 | experienced a substantial loss of function in his right shoulder and right arm which has
7 | negatively affected his ability to practice surgery and thus reduced his income.  In this
8 | lawsuit Dr. Amrani seeks more than $6 million in damages.

Dr. Amrani's final witness list includes, among others, a Rule 30(b)(6) witness whom Dr. Amrani intends to call to address any of the United States' concerns regarding "the foundation or any aspect about procedure or technique in converting the plaintiff's August 5, 2011 MRI . . . to [a] moving picture of frames of the images;"[1] Corrie Yablon, M.D.; Sharon Helman; and Clifford Baker, M.D.  The United States seeks an order excluding some or all of these witnesses' testimony.

## III.  DISCUSSION

### A.  Exhibit 174 and the Related Rule 30(b)(6) Witness

At docket 241 the court admitted Exhibit 174 into evidence—which Dr. Amrani describes in his First Amended Exhibit List as a "Video of MRI of Shoulder and Still Images of MRI Performed at Anthem VA on 8/5/11"[2]—pursuant to the parties' stipulation.  The United States now objects to both Exhibit 174 and the Rule 30(b)(6) witness that Dr. Amrani intends to call to testify about it.  The United States asserts that it "mistakenly agreed to the admission of the exhibit" without having seen it based on the assumption that the exhibit would be comprised of "original, un-doctored MRI images."[3]  Instead, the United States asserts that the exhibit is "a colorized rendition of

---

[1]Doc. 234 at 1.

[2]Doc. 225 at 13.

[3]Doc. 249 at 4.

the MRI, which has been made into a moving picture and includes annotations and anatomical identifications made by unknown, unidentified persons."[4]  The United States asserts that it first became aware of the true nature of the exhibit during Dr. Yablon's trial deposition on January 5, 2015.  It moves for an order excluding Exhibit 174 and testimony from the witness that Dr. Amrani intends to call to testify about it pursuant to Rule 37(c)(1) because Dr. Amrani did not disclose this evidence before the August 18, 2014 deadline for completion of discovery.[5]

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  "In determining whether this sanction should be imposed, the burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) [or (e)] is substantially justified or harmless."[6]  When Rule 37 was amended in 1993 to add paragraph (1), the Advisory Committee noted that it "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence" at trial.[7]  It is intended to "put teeth" into the mandatory disclosure requirements of Rule 26(a) and (e).[8]  The district court's discretion is given "particularly wide latitude" regarding sanctions under Rule 37(c)(1).[9]

---

[4]Doc. 249 at 2.

[5]Doc. 142.

[6]*Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

[7]Fed. R. Civ. P. 37 advisory committee's note (1993 amend.).

[8]*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).

[9]*Id.* at 859.

-3-

The United States argues that there is no justification for Dr. Amrani's failure to comply with Rule 26 and that it will be prejudiced if this evidence is admitted for two reasons: (1) "its experts have been deprived of a fair opportunity to review it," and (2) its lawyers were "deprived of the opportunity to fully prepare for Dr. Yablon's trial deposition."  In response, Dr. Amrani does not contend that he complied with Rule 26 or that his failure was justified.  Instead, he argues that the United States should be bound by its purportedly-mistaken stipulation and that its "argument of prejudice is unsupported" because it does not actually have a radiology expert to review the MRI.

Contrary to Dr. Amrani's argument, the United States is under no burden to prove it will be prejudiced—Dr. Amrani bears the burden to prove that his failure to comply with Rule 26 is harmless.[10]  The court finds that Dr. Amrani's failure to comply with Rule 26 is not harmless because it deprived the United States the ability to effectively cross-examine Dr. Yablon regarding Exhibit 174.  Based on this prejudice, Dr. Yablon's testimony about that exhibit is inadmissible.  Further, based on the surprise caused by Dr. Amrani's failure to timely disclose Exhibit 174, the United States' stipulation to its admission is rescinded, and Exhibit 174 is no longer admitted into evidence.[11]  That being said, the United States' prejudice is curable because its experts and treating physicians have now reviewed the exhibit.[12]  Accordingly, Dr. Amrani is not precluded from attempting to use Exhibit 174 as demonstrative evidence at trial or from calling a Rule 30(b)(6) witness in an attempt to lay any foundation necessary to the exhibit's use.

---

[10]*See Torres*, 548 F.3d at 1213 ("Plaintiffs were not required to articulate how they would be prejudiced by Defendants' failure to provide an expert report.").

[11]*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush.").

[12]Doc. 253 at 2.  *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (holding that one of the factors courts should consider when analyzing Rule 37 sanctions is "the ability of the [opposing] party to cure the prejudice.").

**B.    Dr. Yablon**

Dr. Amrani has named Dr. Yablon as an expert witness.  She is a board-certified radiologist with a subspecialty in "Musculoskeletal (MSK) Imaging."[13]  Because she is unavailable to testify at trial, Dr. Amrani took her videotaped trial deposition on January 5, 2015.  The court makes the following rulings on the United States' objections to Dr. Yablon's testimony:

| Citation | Ruling |
|---|---|
| 13:18-25, 14:1 | Rule 401 (typed as 402) objection OVERRULED |
| 14:9-13 | Rule 401 (typed as 402) objection OVERRULED |
| 15:11-15 | Rule 401 (typed as 402) objection OVERRULED |
| 15:17-20 | Rule 401 (typed as 402) objection OVERRULED |
| 15:25-16:4 | Rule 401 (typed as 402) objection OVERRULED |
| 16:7-10 | Rule 401 (typed as 402) objection OVERRULED |
| 16:14 | Rule 401 (typed as 402) objection OVERRULED |
| 16:25-17:5 | Rule 401 (typed as 402) objection OVERRULED |
| 17:19-19:15 | Objections are OVERRULED |
| 18:5-19:20 | Objections are OVERRULED |
| 20:2-7 | Objections are OVERRULED |
| 21:9-18 | Objections are OVERRULED |
| 22:2-7 | Rule 401 (typed as 402) objection OVERRULED |
| 29:13-14 | Objection based on Order at Docket 230 OVERRULED; other objections are WAIVED |
| 29:17 | Objection based on Order at Docket 230 SUSTAINED; testimony is EXCLUDED |
| 29:23-25; 30:1-2 | Objection based on Order at Docket 230 SUSTAINED; testimony is EXCLUDED |
| 32:19- 33:1 | Objections OVERRULED |
| 33:24-34:5 | Objections OVERRULED |
| 35:22-36:1 | Objection based on Order at Docket 230 SUSTAINED; testimony is EXCLUDED |

---

[13]Doc. 97-3 at 2.

| 36:4-8 | Objection based on Order at Docket 230 SUSTAINED; testimony is EXCLUDED |
|---|---|
| 36:10-13 | Objection based on Order at Docket 230 SUSTAINED; testimony is EXCLUDED |
| 36:18-25 | EXCLUDED by parties' agreement |
| 37:2-9 | EXCLUDED by parties' agreement |
| 37:20-25 | Objections OVERRULED |
| 38:4-7 | Rule 401 (typed as 402) objection OVERRULED |
| 39:16-40:1 | Objections OVERRULED |
| 40:5-16 | Rule 401 (typed as 402) objection OVERRULED |
| 40:24-41:1 | Rule 401 (typed as 402) objection OVERRULED |
| 41:3-4 | Rule 401 (typed as 402) objection OVERRULED |
| 41:6-7 | Rule 401 (typed as 402) objection OVERRULED |
| 41:9-14 | Rule 602 (lack of foundation) objection OVERRULED |
| 42:7-13 | Rule 602 (lack of foundation) objection OVERRULED |
| 42:15 | Rule 602 (lack of foundation) objection OVERRULED |
| 42:17-24 | Objections OVERRULED |
| 43:23-44:1 | Objections are WAIVED |
| 44:8-15 | Objections OVERRULED |
| 44:23-45:3 | Objections OVERRULED |
| 48:16-17 | Objection based on Order at Docket 230 OVERRULED |
| 48:22-24 | Objection based on Order at Docket 230 OVERRULED |
| 50:10-15, 17-19 | Rule 702 objection SUSTAINED; testimony is EXCLUDED |
| 50:22-25; 51:2-3 | Rule 702 objection SUSTAINED; testimony is EXCLUDED |
| 51:5-6, 7, 9-15 | Rule 702 objection OVERRULED |
| 53:9-18, 21-23 | Rule 702 objection OVERRULED |
| 54:7-8 | Objection based on Order at Docket 230 (typed as Docket 223) OVERRULED |
| 54:13-14 | Objection based on Order at Docket 230 (typed as Docket 223) OVERRULED |
| 55:16 -56:15 | Rule 37(c)(1) (lack of disclosure) objection SUSTAINED; testimony is EXCLUDED |

| 72:22-73:6 | Rule 611(a) (redirect beyond scope of cross) objection SUSTAINED; testimony is EXCLUDED |
| 73:16-25; 74:1 | Objection based on Order at Docket 230 SUSTAINED; testimony is EXCLUDED |
| 78:15-23 | Objection based on Order at Docket 230 SUSTAINED; testimony is EXCLUDED |

**C.  Sharon Helman**

Sharon Helman is the Director of the Phoenix VA Medical Center ("Phoenix VA"). Dr. Amrani intends to call Ms. Helman to testify about, among other things, the following topics:

- Her duties as Director of the Phoenix VA;
- Day-to-day operations and procedures at the Phoenix VA;
- Her work on this case;
- Her "cost cutting procedures that jeopardized patient safety and lead to the injuries sustained by the plaintiff;" and
- A report issued by the Office of Inspector General ("OIG") related to alleged mismanagement of Non-VA fee care funds in Fiscal Year 2011.

The United States objects to this testimony pursuant to Rules 401 (typed as 402) and 403.  Dr. Amrani responds by arguing that Ms. Helman's testimony is directly relevant to plaintiff's claims in this case because she was "involved in" Dr. Amrani's care. Dr. Amrani does not explain how this is true other than by reference to a letter that Ms. Helman wrote to Senator John McCain in April 2012.[14]  Dr. Amrani has not shown that Ms. Helman's testimony would be relevant.  The United States' objection will be sustained and her testimony excluded.

**D.  Dr. Baker**

Dr. Baker is one of Dr. Amrani's treating physicians.  The United States objects to two lines of questioning that Dr. Amrani intends to pursue with Dr. Baker.  First,

_____

[14]Doc. 251-1 at 21.

-7-

Dr. Amrani states that he intends to ask Dr. Baker to "look at the raw data and waveforms from the defendant's EMG, if they become available, to compare to the [EMGs] that Dr. Baker performed, should that become an issue."  Dr. Amrani responds to this objection by stating that Dr. Baker will have no raw data to look at, and therefore the United States' objection is moot.  Based on Dr. Amrani's representation, the court does not need to rule on this objection.

        Second, Dr. Amrani states that Dr. Baker is expected to testify about the "delicate nature of the motor skills" that Dr. Amrani "needed to safely treat his patients," and how his injury permanently impairs his ability to practice as a spine surgeon.  The United States objects to this testimony, stating that Dr. Baker is not qualified to testify about the medical and surgical procedures that fall within the ambit of orthopedic spine surgeons.  The United States' argument does not reference Rule 702, but this is the authority upon which it relies.  Rule 702 permits opinion testimony by an expert as long as the witness is qualified and the witness's opinion is relevant and reliable.[15]  Expert opinion testimony is relevant "if the knowledge underlying it has a valid connection to the pertinent inquiry" and it is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."[16]  Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[17] and its progeny, "a district court's inquiry into admissibility is a flexible one."[18]  The purpose of the district court's inquiry is not to "exclude opinions

---

[15]*See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014), *cert. denied sub nom. SQM N. Am. Corp. v. City of Pomona, Cal.*, No. 14-297, 2014 WL 4542540 (U.S. Dec. 15, 2014).

[16]*Id.* at 1044 (citation and internal quotation marks omitted).

[17]509 U.S. 579 (1993).

[18]*Pomona*, 750 F.3d at 1043.

merely because they are impeachable," but rather to "screen the jury from unreliable nonsense opinions."[19]

Dr. Amrani responds that "[a]s a treating physician who specializes in physiatry and rehabilitation medicine, Dr. Baker is more than qualified to testify concerning this issue. Determining what an injured patient can and cannot do is precisely what he does on a daily basis."[20] This mischaracterizes the testimony to which the United States objects. Although Dr. Baker may very well be qualified to testify about the decline of Dr. Amrani's motor skills, he is not qualified to testify about the specific skills that spine surgeons must possess or how a spine surgeon's motor skills affect his practice. The United States' objection is sustained.

## IV. CONCLUSION

For the reasons above, the motion at docket 249 is GRANTED IN PART and DENIED IN PART as follows:

- The United States' stipulation to the admission of Exhibit 174 is rescinded, and Exhibit 174 is no longer admitted into evidence.
- Rulings on the United States' objections to Dr. Yablon's testimony are set out above.
- The testimony of Sharon Helman is excluded.
- Dr. Baker may not testify about the specific skills that spine surgeons must possess or how a spine surgeon's motor skills affect his or her practice.

DATED this 5th day of February 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

[19]*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

[20]Doc. 251 at 5-6.

-9-